**Case No. 22-5737**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NICHOLAS SANDMANN,

Plaintiff/Appellant,

v.

ROLLING STONE, LLC, *et al.*,

Defendants/Appellees.

On Appeal from the United States District Court for the
Eastern District of Kentucky

## SUPPLEMENTAL BRIEF OF APPELLEES
## ROLLING STONE, LLC AND PENSKE MEDIA CORPORATION

Kevin T. Shook
FROST BROWN TODD LLC
10 W. Broad Street, Ste 2300
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLC
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC
and Penske Media Corporation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Appellees Rolling

Stone, LLC and Penske Media Corporation make the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes,
   list below the identity of the parent corporation or affiliate and the relationship
   between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a
   financial interest in the outcome? If yes, list the identity of such corporation
   and the nature of the financial interest:

   No.


Dated: December 23, 2022          /s/     *Kevin Shook*
                                  *Attorney for Rolling Stone, LLC and*
                                  *Penske Media Corporation*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS..........................................................................ii

TABLE OF AUTHORITIES ...................................................................iii

SUPPLEMENTAL COUNTERSTATEMENT OF THE ISSUES
PRESENTED IN JOINT BRIEF ...............................................................1

INTRODUCTION ...................................................................................1

SUPPLEMENTAL STATEMENT OF THE CASE ...................................3

SUPPLEMENTAL ARGUMENT..............................................................6

I.  Sandmann fails to analyze Phillips' statement in the full
    context of the Rolling Stone Article, which the District
    Court correctly held was a nonactionable opinion...............................7

    A.  The Rolling Stone Article presents the Blocking
        Statement as one among several perspectives that
        are not verifiable. .......................................................8

    B.  The style and context of the Rolling Stone Article
        demonstrate that its content, including the Blocking
        Statement, was pure opinion. .......................................9

    C.  The Blocking Statement in the context of the
        Rolling Stone Article did not imply any undisclosed
        defamatory facts.......................................................11

II. Phillips' statements are not capable of a defamatory
    meaning in the full context of the Rolling Stone Article. ...................13

CONCLUSION .....................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allman v. Walmart, Inc.*,
   967 F.3d 566 (6th Cir. 2020) ...............................................................14

*Ball v. E.W. Scripps Co.*,
   801 S.W.2d 684 (Ky. 1990) .................................................................16

*Biber v. Duplicator Sales & Serv., Inc.*,
   155 S.W.3d 732 (Ky. App. 2004) ..........................................................9

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007) .............................................................8, 9

*Croce v. Sanders*,
   843 F. App'x 710 (6th Cir. 2021) ....................................................10, 11

*Cromity v. Meiners*,
   494 S.W.3d 499 (Ky. App. 2016) ........................................................13

*Dermody v. Presbyterian Church (U.S.A.)*,
   530 S.W.3d 467 (Ky. App. 2017) ........................................................16

*Lassiter v. Lassiter*,
   456 F.Supp. 2d 876 (E.D. Ky. 2006) ..................................................13

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .................................................................................9

*Seaton v. TripAdvisor LLC*,
   728 F.3d 592 (6th Cir. 2013) ..............................................................10

*Yancey v. Hamilton*,
   786 S.W.2d 854 (Ky. 1989) .......................................................7, 11, 13

**Other Authorities**

"Cheapskate," Merriam-Webster.com, https://www.merriam-
   webster.com/ ....................................................................................11

Restatement (Second) of Torts § 566.......................................................11

## SUPPLEMENTAL COUNTERSTATEMENT OF THE ISSUES PRESENTED IN JOINT BRIEF

Rolling Stone, LLC and Penske Media Corporation (collectively, "Rolling Stone") adopt and incorporate by reference the Counterstatement of the Issues set out in the Joint Brief.[1]

## INTRODUCTION

The District Court correctly dismissed Appellant Nicholas Sandmann's defamation claim against Rolling Stone, finding its republication of Nathan Phillips' "Blocking Statement" in an article titled "Trump Comes to the Rescue of the MAGA Teens" to be nonactionable opinion. R.E. 61-1, Declaration of Ryan Bort, Exhibit A-1 (the "Article" or "Rolling Stone Article"), PageID #1156–59. Sandmann's appeal of that decision asks this Court to analyze the Blocking Statement in isolation, divorced from the context of the Rolling Stone Article, to determine whether it is "sufficiently factual" to fall outside the First Amendment's protection for opinions. But that is not the law. Under elementary defamation law, context matters. And the context of the Rolling Stone Article plainly demonstrates the District Court got it right.

---

[1] In its October 12, 2022 Order, the Court consolidated this appeal with *Sandmann v. New York Times* (Case No. 22-5734); *Sandmann v. CBS News, Inc., et al.* (Case No. 22-5735); *Sandmann v. ABC News, Inc., et al.* (Case No. 22-5736); and *Sandmann v. Gannett Co., Inc., et al.* (Case No. 22-5738) for briefing and submission. Each appellee in the consolidated appeals has filed the same Joint Brief, which is Docket Entry 26 in this case ("Joint Brief").

The Joint Brief, filed simultaneously with this brief, sets forth the arguments for affirming the District Court's dismissal that are common to all the appellees in Sandmann's consolidated appeals. Rolling Stone filed this supplemental brief to provide the context of the Article that can only lead to one conclusion—the District Court properly granted summary judgment to Rolling Stone.

Sandmann has mischaracterized the Rolling Stone Article as a hurried hit piece that relied upon a deceptive viral video. But the Article is very different from what Sandmann describes. The Article was published four days after a video of Phillips and Sandmann went viral on the internet. The Article focuses on President Trump's reaction to additional videos that emerged, painting Sandmann in a more favorable light. And the Article even links to Sandmann's full public statement responding to Phillips' account of what transpired. Phillips' Blocking Statement is presented in the Article as one of many diverging opinions regarding what took place.

This context not only supports the District Court's conclusion that Rolling Stone's republication of the Blocking Statement is protected opinion, but it also establishes an alternative ground for this Court to affirm: the Blocking Statement in the context of the Rolling Stone Article is not capable of a defamatory meaning. For either or both reasons, this Court should affirm the District Court's judgment.

### SUPPLEMENTAL STATEMENT OF THE CASE

The general facts of this case are set out in the Joint Brief for these consolidated appeals. Joint Brief at 4–30. The specifics of the Rolling Stone Article are set forth here.

The Article, published January 22, 2019, was titled "Trump Comes to the Rescue of the MAGA Teens" and began with a large photograph of then-President Trump. Article, PageID #1156. The opening paragraph indicated it was covering the "confrontation" between "a rowdy group of students" and "a Native-American protester named Nathan Phillips" the previous weekend. *Id.* The Article also identified at least two sides to the incident: Phillips was described as being "taunted by the teens" in one video clip of the January 18 incident, but after the incident, "Sandmann released a statement alleging otherwise while directing people to other clips of the incident." *Id.* The Article pointed out that the emergence of new videos had caused some in the media to "walk[] back" their "previous headlines" that had been based on an initial viral video. *Id.*

The Article explained that "[d]ebate around the confrontation raged throughout the weekend"—i.e., after January 18 and before the Article was published. Article, PageID #1156. The events attracted national attention, and even the president had come to Sandmann's defense. *Id.* The prominent feature of the first full page of the Rolling Stone Article was former President Trump's view of the

events, as expressed in his statements on Twitter, all of which were embedded in the Article. *Id.* at PageID #1156–57. In those tweets, the former President argued that Sandmann had been "treated unfairly with early judgements proving out to be false," and asserted, "'[n]ew footage shows that media was wrong'" about Sandmann's encounter with Phillips. *Id.* at PageID #1157.

The Article then covered Sandmann's statement about the controversy, embedding a hyperlink that, with one click, took the reader to a website with Sandmann's full public statement. *Id.*; *see also* R.E. 60-20, Defendants' Joint Memorandum in Support of Summary Judgment Ex. M ("Sandmann Statement"), PageID #1129–31. In his statement, Sandmann wrote that he "never felt like [he] was blocking the Native American protestor" and he urged readers to "watch the longer video clips that are on the internet, as they show a much different story." *Id.* at PageID #1130-1131. The Article also quoted extensive parts of Sandmann's public statement and his view of the events in question:

> Sandmann claims the students responded with 'school spirit chants,' after which Phillips and other Native-American protesters approached the group, with Phillips 'wading' into the crowd with his drum. Sandmann writes that Phillips locked eyes with him, approached him and began playing his drum 'within inches of my face.' Sandmann says that he was 'startled and confused' and only attempting to 'diffuse the situation' by standing his ground and smiling at Phillips.

Article, PageID #1157; *see also* R.E. 60-20, Sandmann Statement, PageID #1129. The Article also noted that "[a]dditional videos confirm Sandmann's claim that

4

African-American protesters yelled a series of vile invectives at the students. . . ." Article, PageID #1157.[2]

The Article then presented Phillips' perspective, noting that Phillips "admitted that he attempted to intervene between the students and the African-American protesters," but that he "disputed Sandmann's account."  Article, PageID #1157. The Article also republished a statement Phillips originally made to the *Washington Post*:

> 'It was getting ugly,' . . . 'I was thinking: "I've got to find myself an exit out of this situation and finish my song at the Lincoln Memorial." I started going that way, and that guy in the hat stood in my way, and we were at an impasse.  He just blocked my way and wouldn't allow me to retreat.'

Article, PageID #1157 (the "Blocking Statement").  The Article closed by observing the "confusion around what exactly happened" and informing readers that "Sandmann will continue to tell his side of the story" the next day in a television interview.  Article, PageID #1158.

Sandmann alleged that Phillips' Blocking Statement conveyed a defamatory meaning because it imputed to Sandmann "racist conduct."  R.E. 1, Complaint, PageID #41.  Sandmann did not allege that anything else in the Rolling Stone Article was defamatory.  *See generally* R.E. 1, Complaint.

---

[2]     Sandmann's assertion that Rolling Stone quoted Phillips "without qualification or explanation" is thus inaccurate.  Sandmann Brief at 8.

After discovery, during which Sandmann took no depositions, both parties moved for summary judgment. R.E. 59, Plaintiff's Motion for Partial Summary Judgment; R.E. 60, Defendants' Joint Motion for Summary Judgment; R.E. 61, Supplemental Memorandum in Support of Summary Judgment. In addition to the issues of opinion and lack of material falsity raised in the Appellees' Joint Brief, Rolling Stone argued that Phillips' statements were opinions and not defamatory as a matter of law. R.E. 61, Supplemental Memorandum, PageID #1141–50.

The District Court held that Phillips' Blocking Statement was a nonactionable opinion and entered judgment in favor of Rolling Stone. R.E. 88, Opinion and Order, PageID #2816–20, R.E. 89, Judgment Entry. Sandmann's appeal followed. R.E. 90, Notice of Appeal.

## SUPPLEMENTAL ARGUMENT

In addition to the deficiencies identified in the Joint Brief, Sandmann's argument with respect to Rolling Stone suffers another crucial flaw: he never analyzes the Rolling Stone Article itself. Defamation law requires a review of the specific challenged publication and its context. That context proves two points here.

First, any reasonable reading of the Rolling Stone Article confirms that Phillips' Blocking Statement was an opinion. The style of the Article and its presentation of different viewpoints about the standoff make this readily apparent.

6

The District Court's conclusion was thus correct: Phillips' statement, as published by Rolling Stone, was a protected opinion.

Second, neither the Blocking Statement itself, nor within the context of the entire Rolling Stone Article, states or implies that Sandmann engaged in "racist conduct," which is the sole alleged defamatory meaning upon which Sandmann based his claim. The trial court's judgment should be affirmed on either ground.[3]

**I.    Sandmann fails to analyze Phillips' statement in the full context of the Rolling Stone Article, which the District Court correctly held was a nonactionable opinion.**

Sandmann posits that "[n]othing else the defendants published, no other words or descriptions, change the character of Phillips' account." Sandmann Brief at 29. But as set forth in the Joint Brief, this misstates the law of opinion. Courts must consider "the whole context of its publication" in assessing whether a statement is protected opinion. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). Sandmann ultimately admits that determining whether a statement is a fact or an opinion requires review of "the entire context in which the statement was made." Sandmann Brief at 13. The problem is that Sandmann never applies that principle in his brief. Any reasonable analysis of the context of the Article establishes that the Blocking Statement is a nonactionable opinion.

---

[3]    As stated in the Appellees' Joint Brief, this Court's review of all issues here is *de novo*. Joint Brief at 31.

**A.    The Rolling Stone Article presents the Blocking Statement as one among several perspectives that are not verifiable.**

While the circumstances leading to Sandmann's encounter with Phillips are relatively simple (*see* Joint Brief at 8–26), whether Sandmann "blocked" Phillips is a matter of perspective.  Sandmann contends "[t]he test is not whether reasonable observers or readers might differ in their interpretation or perspective . . . ." Sandmann Brief at 20.  Yet that is precisely what a constitutionally protected opinion is—a person's subjective, non-verifiable interpretation of facts. *See Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007).

The differing and evolving opinions about the encounter were the very focus of Rolling Stone's Article—Trump, Sandmann, and Phillips all had diverging perceptions of what happened.  Article, PageID #1157.  For example, the Article quoted extensively from Sandmann's public statement to show that Sandmann's perspective was different from Phillips'.  Article, PageID #1157.  The Article introduced Sandmann's view of the standoff with the phrase "Sandmann claims." *Id.*  The Article then explained what Phillips "admitted," "disputed," and "felt."  *Id.* These are the hallmarks of unprovable opinions.  The Article, when properly read in its entirety, also made clear that Phillips was voicing an opinion by reference to the numerous videos circulating the internet and the countless interpretations of those videos, including by the President of the United States.  Article, PageID #1156–57.

Moreover, Sandmann has acknowledged the incident is a matter of perception. R.E. 81-2, Sandmann Deposition, PageID #3004–3005, 3027–28, 3092.  A few minutes into the standoff, Sandmann perceived that the crowd, including Phillips, was *blocking him*.  *Id.* at PageID #3113.  While Sandmann claims that *he* can decipher what *Phillips* "intended" as "objective fact" (Sandmann Brief at 28), he nevertheless concedes that his own sense of being blocked was subjective opinion. R.E. 81-2, Sandmann Deposition, PageID #3029, 3113.  The District Court thus correctly held that the Blocking Statement merely conveyed Phillips' "state of mind," which "is not capable of being proven true or false."  R.E. 88, Opinion and Order, PageID #2818; *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).

**B.  The style and context of the Rolling Stone Article demonstrate that its content, including the Blocking Statement, was pure opinion.**

Because Sandmann never addresses the Rolling Stone Article specifically, he fails to analyze "the context of the entire communication," as Kentucky law requires. *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 738 (Ky. App. 2004); *see generally* Sandmann Brief at 15-30.

The Article—with Phillips' quote sandwiched within—contains all the badges of an opinion piece.  The category navigation tab in the upper-left corner of the Article is "Politics > Politics News," an inherently opinionated subject.  Article, PageID #1156.  The headline—"Trump Comes to the Rescue of the MAGA

9

Teens"—demonstrates an opinionated focus on the former President, and the subtitle reinforces that. *Id.* ("Right-wing media is using confusion over what exactly happened to paint the Covington Catholic teenagers as victims"). As this Court has noted, "an inherently subjective concept" cannot be an assertion of fact, but rather is a protected opinion. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013). This context of the Rolling Stone Article is consistent with the kind of "jocular" commentary that Sandmann acknowledges is protected opinion. Sandmann Brief at 28-29.

Moreover, the Article extensively addressed former President Trump's opinions about the events, including that "early judgements [were] proving out to be false" and that "'[n]ew footage show[ed] that media was wrong.'" Article, PageID #1157. The President's political opinions filled more than a page of the article. *Id.* Within this context, "reasonable readers would see that there is ample room for a different interpretation of the evidence," including Phillips' Blocking Statement. *Croce v. Sanders*, 843 F. App'x 710, 716 (6th Cir. 2021).

The Article also described the media firestorm that erupted over the polarized views on the subject. Article, PageID #1156 (observing that media was "walking back" initial reporting based on additional videos). Among the comprehensive coverage of the evolving opinions on the standoff were Sandmann's and Phillips' respective statements expressing their views about what happened. *Id.* at PageID

#1157.  Given this context, readers would understand that Phillips' statement was "likely to be a subject of genuine disagreement."  *Croce*, 843 F. App'x at 716.

Sandmann ignores all this context and argues the case should go to trial because a jury could read the dictionary definition of "block."  Sandmann Brief at 11, 16.  A jury's ability to read a definition (of which there are several) does not make a statement factual.  For example, "cheapskate" appears in the dictionary. "Cheapskate,"  Merriam-Webster.com,  https://www.merriam-webster.com/dictionary/cheapskate (last visited November 22, 2022).  But that does not mean describing someone as a "cheapskate" is always a statement of fact.  Determining whether the word could ever be factual would depend on the context in which it appears.  The term "block" is no different.  Sandmann's dictionary argument ignores context and is contrary to well-established First Amendment law.  The District Court's judgment should be affirmed.

## C.    The Blocking Statement in the context of the Rolling Stone Article did not imply any undisclosed defamatory facts.

The District Court correctly concluded that "Phillips's statement did not imply the existence of any nondisclosed defamatory facts."  R.E. 88, Opinion and Order, PageID #2820.  While Sandmann broadly argues the District Court did not perform the opinion analysis required by Kentucky law and the Restatement (Second) of Torts (Sandmann Brief at 27), the Court's analysis is precisely what the law requires. *Yancey*, 786 S.W. 2d at 857; Restatement of Torts (Second), § 566.  And Sandmann

fails to provide any argument that the Blocking Statement in the context of the Rolling Stone Article implied any nondisclosed defamatory facts because nothing in the record would support such a finding.

Rather than implying nondisclosed defamatory facts, the Article presented the Blocking Statement as one opinion among many others about events that had become the topic of widespread controversy. The Article described a "fracas"—a chaotic scene—that could be interpreted differently by different people. Article, PageID #1156. From the outset, the Article put both Phillips' and Sandmann's opinions in context. It included an explanation of the crowds of different protesters at the Memorial that day, such as the Black Hebrew Israelites, who had yelled "obscenities" at a "rowdy group" of Covington Catholic students. *Id.* The Article thus made clear that even those who were present and participated in the events leading up to Sandmann's encounter with Phillips had wildly different perspectives regarding what was taking place.

Phillips' Blocking Statement was presented only after devoting a full page to the former President's opinion on the events (*id.* at PageID #1156–57) and the author's own critique about the media walking back prior headlines in the wake of "additional video" (*id.* at PageID #1157). Phillips' statement also came after an in-depth summary of Sandmann's interpretation of what transpired, including a link to his full public statement claiming that he was "attempting to 'diffuse the situation,'"

and that he "never felt like he was blocking the Native American protester."  R.E. 60-20, Sandmann Statement, PageID #1130.  Both Sandmann's statement and the Article itself directed readers to new videos of the incident, which only further emphasized the disputed nature of Phillips' (and Sandmann's) opinions and offered readers the chance to evaluate each participant's statements for themselves.

Given the context of the Rolling Stone Article, readers were "in as good a position as" Phillips to judge the Blocking Statement and form their own conclusions.  *See Lassiter v. Lassiter*, 456 F.Supp. 2d 876, 882 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008).  The District Court correctly found the article was protected opinion because it did not imply any incomplete, erroneous, or undisclosed defamatory facts.  *Yancey*, 786 S.W.2d at 857; *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. App. 2016).

## II.    Phillips' statements are not capable of a defamatory meaning in the full context of the Rolling Stone Article.

Summary judgment was proper for another reason: in the context of the Rolling Stone Article, Phillips' statements are not capable of the defamatory meaning Sandmann attempts to foist on them.  Although the District Court properly granted summary judgment to Rolling Stone because the Blocking Statement was protected opinion, this Court can and should also affirm that judgment on the

alternative ground that the Article is not defamatory as a matter of law.[4]  *Allman v.*

*Walmart, Inc.*, 967 F.3d 566, 575 (6th Cir. 2020).

Sandmann's sole claim against Rolling Stone is that its republication of the

Blocking Statement imputed to Sandmann "racist misconduct," which he asserts is

defamation per se.   R.E. 1, Complaint, PageID #39, 41.   Such a meaning is

impossible to find within the four corners of the Rolling Stone Article.  Moreover,

Sandmann now admits that his claim is not one of defamation per se, but based on

purported defamatory implications.  Sandmann Brief at 5 ("These statements were

loaded with defamatory implications.").  Yet even after discovery, Sandmann

introduced no evidence that anyone derived his racist interpretation from the Rolling

Stone Article.  Sandmann's attempt to infer an accusation of racist conduct from the

Rolling Stone Article fails for three reasons: (1) the Blocking Statement carries no

more defamatory meaning than Sandmann's own description of his conduct; (2) the

Article said nothing about racist conduct by Sandmann; (3) and any alleged

defamatory meaning would have to be inferred from external evidence that does not

exist.

---

[4]     Sandmann may argue in reply, as he did in summary judgment briefing, that the law of the case forbids reconsideration of this issue after an initial ruling at the pleading stage.  His argument fails for the same reasons explained in the Joint Brief. Joint Brief at 49–53.

First, the meaning of the Blocking Statement is consistent with Sandmann's own description of his encounter with Phillips. In his deposition, Sandmann conceded he intentionally planted his foot in front of Phillips to establish that his school would not be intimidated: "I figured was it time for someone to plant their foot and stand there where I had been and just face up. . . ." R.E. 81-2, Sandmann Deposition, PageID #3003–3004; *see also id.* at PageID #3005. The meaning of Phillip's statement was nearly identical: Sandmann "stood in my way, and we were at an impasse"; "[h]e just blocked my way and wouldn't allow me to retreat." Article, PageID #1157. Phillips' Blocking Statement does not imply Sandmann was engaged in "racist misconduct" any more than Sandmann's own description that he intentionally planted his feet in front of Phillips so he could "face up."

Moreover, as Sandmann admits, many people now perceive him as a "poster for not being intimidated," with tributes on "Stand Your Ground" shirts, the song "I Won't Back Down," and a speech about his actions at the Republican National Convention. R.E. 81-2, Sandmann Deposition, PageID #3024–27; 3117–23; 3188–93. The public celebration of Sandmann standing his ground further demonstrates that Phillips' description of Sandmann blocking his way is not defamatory.

Second, no allegations of racism on Sandmann's part can be inferred from the Blocking Statement as it was presented in the Rolling Stone Article. The words "race," "assault," and "crime"—Sandmann's unjustified inferences—appeared

nowhere in the Article.  The crux of Sandmann's claim is that the Blocking Statement alone constitutes a charge of racial animus against him.  R.E. 1, PageID #39, 41. But this is a logical leap that has no relation to the actual statement or its publication.

Stripped of external influence, all one learns about the participants in the standoff from the Rolling Stone Article is that Phillips is a former Marine and Sandmann wore a hat.[5]  Article, PageID #1157.  Nothing about Phillips' assertion that "I started going that way, and that guy in the hat stood in my way, and we were at an impasse" accused Sandmann of holding racist views or lowered him in the eyes of the community.  *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 688 (Ky. 1990).  And the statement, "[h]e just blocked my way and wouldn't allow me to retreat," in the context of the whole Rolling Stone Article, did not carry a defamatory sting.

<u>Third</u>, the only way to manufacture Sandmann's defamatory inferences, as he now admits, would be through extrinsic evidence that he lacks.  *See* Sandmann Brief at 5.  According to Sandmann, the public scorn supposedly arising from the January 18 standoff came about that same night when a video of the incident went viral.  R.E.

---

[5]    Sandmann's defamatory meaning argument apparently rests on his hat. Sandmann Brief at 5.  He asks the Court to conclude that "Make America Great Again" apparel, through its connection to former President Trump, always bears a racist undertone, which was attributed to him. But this kind of speculation and "innuendo" are not permissible ways to establish a defamation *per se* case. *Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. App. 2017).

81-2, Sandmann Deposition, PageID #3222.  By Sandmann's own admission, then, the supposed "defamatory implications" and public contempt were based on an incomplete video published four days before Rolling Stone's Article on January 22. To be clear, this third point is not about Sandmann's lack of causation or damages. Rather, the undisputed evidence establishes that the Article itself was not the source of Sandmann's alleged defamatory meaning.

The Rolling Stone Article discredited the viral video that Sandmann claims portrayed him unfairly, directed readers to different perspectives in new videos, and linked and quoted Sandmann's own statement telling his side of the story. The Article was not defamatory.  For this alternative reason, summary judgment for Rolling Stone was proper.

## CONCLUSION

The Blocking Statement as published in the Rolling Stone Article constitutes a protected statement of opinion and is not capable of a defamatory meaning.  On either basis, the judgment of the District Court should be affirmed.

Respectfully submitted,

/s/ *Kevin T. Shook*
Kevin T. Shook
FROST BROWN TODD LLC
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLC
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC*
*and Penske Media Corporation*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that this SUPPLEMENTAL BRIEF OF APPELLEES ROLLING STONE, LLC AND PENSKE MEDIA CORPORATION complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and this Court's prior orders. Excluding the items listed in Fed. R. App. P. 32(f), this brief contains 3,927 words.

/s/ *Kevin T. Shook*
Kevin T. Shook
FROST BROWN TODD LLC
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLC
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC and Penske Media Corporation*

19

## CERTIFICATION OF SERVICE

I hereby certify that on this 23rd day of December, 2022, I electronically filed the SUPPLEMENTAL BRIEF OF APPELLEES ROLLING STONE, LLC AND PENSKE MEDIA CORPORATION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

/s/ *Kevin T. Shook*
Kevin T. Shook
FROST BROWN TODD LLC
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLC
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC and Penske Media Corporation*

0144420.0730688   4874-0308-9214v19